John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941

Joseph M. Lyon (SBN 351117)
**THE LYON FIRM**
9210 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (513) 381-2333
Facsimile: (513) 766-9011

*Class Counsel*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HOUSER LLP DATA BREACH LITIGATION | CASE NO. 8:24-CV-00468-WLH-ADS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** October 31, 2025<br>**Time:** 8:30 a.m.<br>**Courtroom:** 9B<br>**Judge:** Hon. Wesley L. Hsu |

-i-

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................iv

I.      INTRODUCTION ...........................................................................1

II.     STATEMENT OF FACTS ...............................................................2

III.    PROCEDURAL HISTORY ............................................................2

IV.     THE SETTLEMENT TERMS .........................................................3

        A.     The Settlement Class ...........................................................3

        B.     Settlement Benefits .............................................................4

               1.     Monetary Relief...........................................................4

               a. Out-of-Pocket Losses and Expenses Reimbursement ............................5

               b. CCPA Payment.................................................................5

               c. WCPA Payment...............................................................6

               d. *Pro Rata* Cash Payment ..............................................6

               2.     Non-Monetary Settlement Benefits – Business Practice Changes........6

               3.     Class Notice and Settlement Administration ...............................7

               4.     Attorneys' Fees and Expenses and Service Award to Plaintiff.............8

               5.     Release..................................................................8

V.      CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS ...............8

VI.     LEGAL ARGUMENT....................................................................9

        A.     The Court Should Certify the Class for Settlement Purposes ...................9

               1.     The Rule 23(a) Requirements Are Met for Purposes of Settlement.....9

               2.     The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement ........11

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

B.    The Court Should Finally Approve the Settlement ...................................... 13

    1.    The Strength of Plaintiffs' Case .......................................................... 14

    2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................................................................ 15

    3.    The Risk of Maintaining Class Action Status Through Trial .............. 16

    4.    Amount Offered in Settlement ............................................................ 16

    5.    The Extent of Discovery Completed and the Stage of Proceedings.................... 18

    6.    The Experience and Views of Counsel ................................................ 18

    7.    The Reaction of the Class Members to the Proposed Settlement ........ 19

    8.    Lack of Collusion among the Parties ................................................... 19

    9.    The Settlement Treats Class Members Equitably ............................... 20

VII.    CONCLUSION .......................................................................................... 20

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-iii-

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                                                    <u>Page</u>

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997) ...............................................................................9, 12, 13

*Atkinson v. Minted, Inc.*,
　No. 3:20-cv-03869-VC, 2021 U.S. Dist. LEXIS 244257 (N.D. Cal. Dec. 17,
　2021) .............................................................................................................17

*Calderon v. Wolf Firm*,
　2018 WL 6843723 (C.D. Cal. Mar. 13, 2018).................................................18

*Capaci v. Sports Rsch. Corp.*,
　2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) .................................................12

*Chester v. TJX Cos.*,
　2017 WL 6205788 (C.D. Cal. Dec. 5, 2017)...................................................15

*Chua v. City of L.A.*,
　2017 WL 10776036 (C.D. Cal. May 25, 2017) ...............................................12

*Dennis v. Kellogg Co.*,
　2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................................................15

*Ellis v. Costco Wholesale Corp.*,
　657 F.3d 970 (9th Cir. 2011) .......................................................................9, 11

*Franklin v. Kaypro Corp.*,
　884 F.2d 1222 (9th Cir. 1989) .........................................................................14

*Gregorson v. Toshiba America Business Solutions, Inc.*,
　2025 WL 2671589 (C.D Cal. 2025)................................................................13

*Hanlon v. Chrysler Corp*,
　150 F.3d, 1011 (9th Cir. 1998) ..................................................................11, 12

*Hashemi v. Bosley*,
　2022 WL 2155117 (C.D. Cal. 2022)...............................................................13

*Hellyer v. Smile Brands Inc.*,
   No. 8:21-cv-01886-DOC-ADS, 2023 U.S. Dist. LEXIS 137295 (C.D. Cal. Aug.
   4, 2023) ................................................................................................................17

*Hillman v. Lexicon Consulting, Inc.*,
   2017 WL 10434013 (C.D. Cal. Oct. 12, 2017) ..................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................14

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .............................................................................16

*In re Equifax Customer Data Sec. Breach Litig.*,
   2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020)................................17

*In re Google LLC St. View Elec. Communs. Litig.*,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ...................................................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .............................................................................10

*In re MRV Communs., Inc. Derivative Litig.*,
   2013 WL 2897874 (C.D. Cal. June 6, 2013)......................................................16

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   2019 WL 3410382 (D. Or. July 29, 2019) .........................................................10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)..............................................................20

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................15

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ...........................................................................11

*Keegan v. Am. Honda Motor Co*,
   284 F.R.D. 504 (C.D. Cal. 2012) .......................................................................12

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................15, 18

*Longest v. Green Tree Servicing LLC*,
   308 F.R.D. 310 (C.D. Cal. 2015) ....................................................................11

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................19

*Paz v. AG Adriano Goldschmeid, Inc.*,
   2016 WL 4427439 (S.D. Cal. Feb. 29, 2016)..................................................16

*Reynoso v. All Power Mfg. Co.*,
   2018 WL 5906645 (C.D. Cal. Apr. 30, 2018) ..................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016).....................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .........................................................................................10

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ........................................................................11

**Statutes**                                        **Page**

WA Rev Code § 19.86.010 (2017)..........................................................................3

**Rules**                                             **Page**

Fed. R. Civ. P. 23(a) ...........................................................................................9, 11

Fed. R. Civ. P. 23(a)(1) .........................................................................................10

Fed. R. Civ. P. 23(a)(3) .........................................................................................10

Fed. R. Civ. P. 23(a)(4) .........................................................................................11

Fed. R. Civ. P23(b)(3)...............................................................................11, 12, 13

Fed. R. Civ. P. 23(e) ......................................................................................14, 20

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................20

**Other Authorities**                                                   **Page**

4 Newberg on Class Actions, § 11:48 (4th ed. 2002)............................................19

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-vii-

## I.    <u>INTRODUCTION</u>

Plaintiffs, through their undersigned counsel, respectfully move this Court for entry of an order granting final approval to the $1,300,000 common fund settlement memorialized in the Settlement Agreement ("SA") (ECF No. 43-2),[1] that, subject to the Court's approval, will resolve this class action lawsuit. The parties filed the SA together with Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 43) on February 12, 2025. At the March 21, 2025, hearing on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement the Court granted preliminary approval. ECF No. 45 (the "PAO"). Notice was issued to the preliminarily certified Settlement Class ("Class") as directed by the Court in the PAO.

This settlement—which makes available to every Class Member ("Class Member") considerable monetary relief—represents an excellent resolution of this high-risk and complex Litigation. The Claims Deadline is October 1, 2025, and the Objection and Opt-Out Deadlines were August 18, 2025. SA, ¶¶ 1.8, 1.21-1.22. Thus far, the reaction of the Class has been overwhelmingly positive. With the exclusion and objection deadline long since passed, in response to the 368,454 notices that were mailed to Class Members, only one objection has been filed (which, as explained below, appears to be an attempt to submit a claim) and only six individuals have requested exclusion from the Settlement. Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Kroll Decl."), ¶¶ 17-18. Furthermore, while the Claims deadline remains open until October 1, 2025, 14,598 claims have already been received by the Claims Administrator, representing an impressive 3.96% claims rate to date. *Id.* ¶ 15.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement unless otherwise specified.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

This Court should now finally certify the Class for settlement purposes only, and finally approve the settlement as fair, reasonable, and adequate.

## II. STATEMENT OF FACTS

On or about February 28, 2024, Houser LLP ("Houser") notified approximately 372,215 individuals of the Data Incident. Kroll Decl. ¶¶ 7, 34. Plaintiffs brought this action on behalf of all persons whose Personal Identifiable Information ("Private Information" or "PII") Plaintiffs allege was compromised by Houser's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. CCAC ¶ 10, ECF No. 32.[2] Plaintiffs allege that Houser's conduct amounted to negligence, breach of contract, and violates federal and state statutes. *Id.* ¶ 14. Plaintiffs allege that they and Class Members have suffered injury as a result of Houser's conduct, including: (i) invasion of privacy; (ii) loss of time and loss of productivity incurred mitigating the risks of the identity theft; (iii) loss of time incurred due to actual identity theft, (iv) loss of time due to increased spam and targeted marketing emails; (v) diminution of value of their PII; and (vi) the continued and certainly increased risk to their PII, which remains in Houser's possession and is subject to further unauthorized disclosures so long as Houser fails to undertake appropriate and adequate measures to protect the PII. *Id.* ¶ 70.

## III. PROCEDURAL HISTORY

On March 4, 2024, Plaintiff McMillen filed a lawsuit asserting claims against Houser relating to the Data Incident (the "Litigation"). Soon thereafter, several other complaints were filed against Houser by Plaintiffs asserting similar claims. On March 15, 2024, this Court ordered the cases to be consolidated. ECF No. 21. On August 8,

---

[2] Consolidated Class Action Complaint, ECF No. 32 ("CCAC").

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

2024, Plaintiffs filed a CCAC alleging five causes of action against Houser: (i) Negligence; (ii) Third-Party Beneficiary Contract; (iii) violations of the California Consumer Privacy Act ("CCPA"); (iv) violation of the Washington Consumer Protection Act ("WCPA"), RCW 19.86.010, *et seq.*; (v) Declaratory and Injunctive Relief. CCAC ¶ 14.

After filing the CCAC and over the course of several months, Plaintiffs' counsel continued to investigate the facts of the Data Incident and Houser's responsive measures, leading to informed settlement negotiations. Joint Declaration of Joseph M. Lyon and John J. Nelson in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Joint MFA Decl."), ¶ 6. After spending considerable time and effort negotiating and exchanging informal discovery, the parties reached an agreement to settle this matter for a common fund settlement of $1,300,000 together with certain non-monetary relief for the Class described below and spent the next several weeks finalizing the full scope of the Settlement, executing the Settlement Agreement on December 3, 2025. *Id.* ¶ 7. Plaintiffs then moved for Preliminary Approval on February 12, 2025, which this Court granted on May 19, 2025. ECF No. 45.

## IV.     THE SETTLEMENT TERMS

### A. The Settlement Class

The Settlement provides relief for the following Class: "[A]ll persons whose Private Information was actually or potentially accessed or acquired during the Data Incident that is subject of the Notice of Data Incident that Defendant published to Plaintiffs and other Settlement Class Members starting on or around February 28, 2024." SA ¶ 1.28.

Additionally, the Settlement creates a California Subclass, consisting of "all California residents whose Private Information was actually or potentially accessed

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-3-

or acquired during the Data Incident that is the subject of the Notice of Data Incident that Defendant published to Plaintiffs and other Class Members starting on or around February 28, 2024." *Id.* ¶ 1.31.

The Settlement also creates a Washington Subclass, which includes "all Washington State residents whose Private Information was actually or potentially accessed or acquired during the Data Incident that is the subject of the Notice of Data Incident that Defendant published to Plaintiffs and other Class Members starting on or around February 28, 2024." *Id.*

The following are excluded from the Class and Washington and California Subclasses: (i) Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; (ii) all individuals who make a timely election to be excluded from the proceeding using the correct protocol for opting out; (iii) any and all federal, state or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) all judges assigned to hear any aspect of this Litigation, as well as their immediate family members. *Id.* ¶¶ 1.28, 1.31.

The Court granted provisional certification of the National Class and the California and Washington Subclasses for settlement purposes only in its PAO. ECF No. 45.

### B. Settlement Benefits

#### 1. Monetary Relief

The Settlement provides significant benefits through a non-reversionary $1,300,000 common fund from which Class Members may receive up to four separate forms of monetary relief: (i) reimbursement of verified Out-of-Pocket Losses; (ii) CCPA Payment; (iii) WCPA Payment; and (iv) a *Pro Rata* Cash Payment. *Id.* ¶¶ 1.30,

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

2.1-2.3. The CCPA and WCPA Payments are provided to residents of the respective states in recognition of their claims under the CCPA and WCPA. *Id.* ¶¶ 2.3.2-2.3.3.

### a. Out-of-Pocket Losses and Expenses Reimbursement

The first category of payments is designed to provide compensation to Class Members for Out-of-Pocket Losses and Expenses, which are unreimbursed costs, expenditures, or losses incurred by a Class Member that are fairly traceable to the Data Incident, up to $5,000. *Id.* ¶ 2.3.1. This category specifically includes, without limitation:

1) Unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Class Member's Social Security number;

2) Unreimbursed costs incurred on or after May 7, 2023, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency;

3) Other unreimbursed miscellaneous expenses incurred related to any Out-of-Pocket Expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

4) Other mitigative costs that were incurred on or after May 7, 2023, through the date of the Class Member's claim submissions; and

5) Unpaid time off work to address issues fairly traceable to the Data Incident at the actual hourly rate of that Class Member.

*Id.*

### b. CCPA Payment

California Subclass Members are eligible for a separate damages award. The amount awarded to California Subclass Members who submit a Valid Claim shall be $100 that can be combined with Out-of-Pocket Losses and Expenses and a *Pro Rata*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-5-

Cash Payment. *Id.* ¶ 2.3.2. The CCPA Payment may be *pro rata* decreased if insufficient funds remain in the Settlement Fund following the payment of Attorneys' Fees and Expenses Award, any Service Awards, the Costs of Claims Administration, claims for Out-of-Pocket Losses. *Id.* ¶¶ 2.3.2, 2.3.4.

### c.  WCPA Payment

The Washington Subclass Members are eligible for a separate damages award. The amount awarded to Washington Subclass Members who submit a Valid Claim shall be $25, which can be combined with a claim for Out-of-Pocket Losses and Expenses and a *Pro Rata* Cash Payment. *Id.* ¶ 2.3.3. The WCPA Payment may be *pro rata* decreased if insufficient funds remain in the Settlement Fund following the payment of Attorneys' Fees and Expenses Award, any Service Awards, the Costs of Claims Administration, claims for Out-of-Pocket Losses. *Id.* ¶¶ 2.3.3-2.3.4.

### d.  *Pro Rata* Cash Payment

All Class Members may file a claim for a *Pro Rata* cash payment estimated to be $50.00. *Id.* ¶ 2.3.4. The amount of this benefit shall be increased or decreased based on the funds remaining in the Settlement Fund following the payment of Attorneys' Fees and Expenses Award, any Service Awards, the Costs of Claims Administration, claims for Out-of-Pocket Losses, and the California and Washington Subclass Payments. *Id.* Any increase will be done *pro rata* based on the amount of the claims and any decrease will be done pursuant to SA ¶¶ 2.3., 2.3.4.

### 2.  Non-Monetary Settlement Benefits – Business Practice Changes

In addition to the cash benefits offered to the Class, Houser has agreed to maintain steps to secure sensitive PII within its platform. *Id.* ¶ 2.4. Houser is responsible for all costs associated with implementing and maintaining these business practice commitments, which costs are borne by Houser separate and apart from the Settlement Fund. *Id.* These changes will benefit Class Members whose PII remains

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-6-

in Houser's possession, and also those who entrust their PII to Houser in the future.

### 3. Class Notice and Settlement Administration

The parties agreed to the appointment of Kroll Settlement Administration LLC as Claims Administrator ("Kroll") and Kroll's costs will be paid from the Settlement Fund. *Id.* ¶ 3.3. Notice was given to the Class via individual notice, sent by first-class mail. Kroll Decl. ¶ 10. The initial class list files contained 374,854 records with names, addresses, and addresses to which notice of the Data Incident was sent and returned as undeliverable. *Id.* ¶ 7. However, after deleting 2,638 duplicates and 4,383 records that were previously sent notice of the Data Incident and were returned as undeliverable, from the initial class list, Kroll was left with a final list of 368,454 Class Members to whom Short Notices would be mailed. *Id.* Kroll also ran Class Member information through the USPS's National Change of Address ("NCOA") database and updated the Class Member Information with address changes received from the NCOA. *Id.* Kroll believes that the Short Notices reached 359,180 of the 372,215 Class Members for a reach rate of approximately 96.50%, significantly more than the Federal Judicial Center Guidelines which state that a reach rate of 70% is considered high percentage for a notice campaign. *Id.* ¶ 13.

On June 17, 2025, Kroll established a dedicated Settlement Website, www.HLLPSettlement.com, which contains information on the Litigation, including a summary of the settlement, important dates and deadlines, contact information for Kroll, answers to frequently asked questions, copies of the Settlement and notice documents, and allowed Class Members to file a Claim Form, objection, or exclusion request online. *Id.* ¶ 9. Kroll also established a toll-free telephone number that Class Members could call to obtain additional information regarding the Settlement, and the number has received 977 calls as of September 26, 2025. *Id.* ¶ 5.

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

### 4. Attorneys' Fees and Expenses and Service Award to Plaintiff

Under the terms of the Settlement Agreement, Class Counsel moved the Court for an award of their reasonable attorneys' fees incurred in the Action in an amount not to exceed one-third (1/3) of the Settlement Fund, and reimbursement of costs and expenses of an amount not to exceed $433,333.33. SA ¶ 7.2. This amount represents a modest multiplier of 1.76 on Class Counsel's lodestar as of the filing of the Motion for Attorneys' Fees and does not account for all subsequent work to be done by Class Counsel up and through the Final Approval Hearing. ECF No. 47, at 16. Class Counsel has also incurred a total of $16,416.57 in litigation expenses for which they are seeking reimbursement. *Id.* at 16. Finally, each Plaintiff requests the Court grant their request for service awards of $2,000 for each Plaintiff, for a total of $12,000, in light of their commitment to and risks in pursuing the litigation on behalf of the class.

### 5. Release

Upon entry of the Final Approval Order, Plaintiffs and the Class will be deemed to "have, fully, finally, and forever released, relinquished, and discharged all Released Claims." SA ¶ 6.1. Released Claims do not include the claims of individuals who have timely excluded themselves from the Class. *Id.* ¶ 1.25.

## V. CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS

The deadline to object or opt-out was August 18, 2025. Kroll Decl. ¶ 17. As of the filing of this motion, only six individuals have timely requested exclusion and only one individual has filed an objection.[3] *Id.* ¶ 18. The Claims Deadline is October 1, 2025. *Id.* ¶ 14. As of the filing of this motion, the Claims Administrator has received 8,310 paper claims and 6,288 electronic claims through the Settlement

---

[3] The objection was incomplete and appears to have been an attempt to submit a claim for Out-of-Pocket Losses Reimbursement, as it was blank, but for the number "$5,000." All attempts to contact this objector have been unsuccessful. Kroll Decl. ¶ 18.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.  8:24-cv-00468-WLH-ADS

-8-

Website, for a total of 14,598 claims. *Id*. ¶ 15. The 14,598 claims received so far results in a claims rate of approximately 3.9%, which is higher than the range of claims rates in other data breach class action settlements within this Circuit. *See*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL8153712 *9 (C.D. Cal.) (Claims rate of 1.6%); *Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-9600 (C.D. Cal.) ECF Nos. 145-1 at 11 n.8 & 164 at 2 (Claims rate of 0.7%); *Cochran, et al. v. Kroger Co.*, 5:21-cv-01887 (N.D. Cal.) ECF Nos. 108 at 4-6 & 108-1, ¶ 4 (Claims rate of 2.1%); *Atkinson et al. v. Minted, Inc.*, No. 3:20-cv-03869 (N.D. Cal.) ECF No. 71 at 4 (Claims rate of 3.5%).

Kroll will continue to receive, review, cure, and validate claims that are timely received through the October 1, 2025, postmark deadline.

## VI.   <u>LEGAL ARGUMENT</u>

### A. The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Class met these requirements in its PAO and provisionally certified the Class for settlement purposes. *See* PAO at 10. Plaintiffs respectfully submit the Court's original assessment was correct and it should now certify the Class for settlement purposes.

### 1.  The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Class includes approximately 372,215 individuals (Kroll Decl. ¶ 7); therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1).

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, and in particular, satisfying the commonality requirement. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *10 (D. Or. July 29, 2019). For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII was compromised during the Data Incident; whether Defendant owed a duty to Plaintiffs and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiffs and Class Members of the material facts of the Data Incident.

Typicality and adequacy are also easily met for purposes of settlement. Plaintiffs' claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PII and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); Forcellati v. Hyland's, Inc., 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members). Plaintiffs allege that their PII was compromised, and that Defendant's same alleged poor data security practices caused them the same

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiffs are also adequate class representatives because (1) there are no antagonistic or conflicting interests between Plaintiffs and their counsel and the absent Class Members; and (2) Plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiffs have no conflicts of interest with other Class Members, are not subject to unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Plaintiffs are members of the Class who have experienced the same injuries and seek, like other Class Members, compensation. As such, Plaintiffs' and Class Counsel's interests align with those of the Class. Further, Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Class. *See* Joint MFA Decl. ¶ 19. Thus, Plaintiffs will adequately protect the interests of the Class.

### 2. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs allege that the Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any individual questions and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon*, 150 F.3d at 1022.

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

Common questions of law and fact predominate over individualized questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *9 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Reynoso v. All Power Mfg. Co.*, 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a prima facie showing on an issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. *Chua v. City of L.A.*, 2017 WL 10776036, at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect their PII. That question can be resolved using the same evidence for all Class Members and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods, Inc.*, 136 S. Ct. at 1045 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) …'") (citation omitted).

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, class treatment of Plaintiffs' and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively minor amount of damages traceable to each Class Member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *Gregorson v. Toshiba America Business Solutions, Inc.*, 2025 WL 2671589 *3 (C.D Cal. 2025); *Hashemi v. Bosley*, 2022 WL 2155117 *4 (C.D. Cal. 2022). Further, the Class consists of hundreds of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Incident. All these considerations demonstrate the superiority of a class action here.

## B. The Court Should Finally Approve the Settlement

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-13-

For a proposed class action to be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case for liability. In particular, all Plaintiffs believe ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiffs' and the Class's PII. Joint MFA Decl. ¶ 5. Moreover, Plaintiffs believe that once they establish that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint. *Id*. ¶ 22. However, Plaintiffs' success is not guaranteed. The actual recovery realized and

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-14-

risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*; *see also Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiffs face with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement. Joint MFA Decl. ¶ 22.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, substantial risk is inherent in all cases. This case involves a proposed class of approximately 372,215 individuals and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular  Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) —this is a particularly complex class action due to the standing challenges plaintiffs face in data breach class actions. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017)  ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making accepting a  favorable

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

settlement the more prudent course. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. As in any data breach case, establishing causation on a class-wide basis also remains uncertain.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3. The Risk of Maintaining Class Action Status Through Trial

The Court's PAO analyzed the requirements of Rule 23, found the requirements satisfied, and conditionally certified the Class and Subclasses. Nothing has changed that would affect the Court's ruling on class certification. For the reasons stated in the preliminary approval motion and the PAO, the Court's certification of the Class and Subclasses for settlement purposes only should be affirmed.

### 4. Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides substantial monetary relief to Class Members who submit valid Claim Forms. *See* SA ¶ 2.3. The settlement also involves significant business practice enhancements for Defendant's data security system, which will help to protect the Class's PII going forward. *Id.* ¶ 2.4. The $1,300,000 cash settlement fund, excluding the non-cash benefit, represents a recovery of $3.53 per Class Member, which is on the higher end of recoveries in

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-16-

data breach class actions, as can be seen from the following chart of representative cases:

| Case Title | No. of Class Members | Settlement Fund | Amount Per Class Member |
|---|---|---|---|
| *In re Equifax Inc. Data Security Breach Litig.*[4] | >147M | $380.5M | $2.59 |
| *Atkinson, et al. v. Minted, Inc.*[5] | 4.2M | $5M | $1.19 |
| *Hellyer et al. v. Smile Brands, Inc. et al.*[6] | 1.5M | $5M | $3.33 |
| *In re Sonic Corp. Customer Data Sec. Breach Litig.*[7] | 1.5M | $4.325M | $2.88 |

Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiffs would not succeed at trial, the present settlement represents an excellent compromise of Plaintiffs' and the Class Members' claims. Joint MFA Decl. ¶ 23.

In the instant matter, the benefits to the Class are far superior to those offered in the above cases, as all Class Members are receiving substantial benefits, including reimbursement for: (i) Out-of-Pocket losses of up to $5,000; (ii) California Subclass CCPA Payments of $100; (iii) Washington Subclass WCPA Payments of $25; and (iv) a *Pro Rata* Cash Payment estimated to be approximately $50 per Class Member

---

[4] *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *145, 149–50 (N.D. Ga. Mar. 17, 2020).
[5] *Atkinson v. Minted, Inc.*, No. 3:20-cv-03869-VC, 2021 U.S. Dist. LEXIS 244257, at *2–4 (N.D. Cal. Dec. 17, 2021).
[6] *Hellyer v. Smile Brands Inc.*, No. 8:21-cv-01886-DOC-ADS, 2023 U.S. Dist. LEXIS 137295, at *3 (C.D. Cal. Aug. 4, 2023).
[7] *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *3 (N.D. Ohio Aug. 12, 2019).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

who makes a claim. SA ¶ 2.3.

Because the settlement here is similar to other settlements that courts, including those in this district, have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

## 5.  The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered all of the information that was available regarding Houser and the Data Incident—including publicly-available documents concerning announcements of the Security Incident and notice of the Security Incident to its customers and various states' Attorneys General. Joint MFA Decl. ¶ 24. Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending significant time and money to come up to speed on the subject area. *Id.* ¶ 20. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *4 (C.D. Cal. Oct. 12, 2017). Accordingly, Plaintiffs made a decision fully informed about the strengths and weaknesses of this case.

## 6.  The Experience and Views of Counsel

Class Counsel initiated this lawsuit after Defendant announced the Data Incident, which impacted approximately 372,215 individuals. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint MFA Decl. ¶ 19. Having worked on behalf of the Class since the Data Incident was first announced, evaluated the legal and

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-18-

factual disputes, and dedicated significant time and resources to this litigation, Class Counsel fully endorse the settlement. *Id*. ¶ 25. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

### 7. The Reaction of the Class Members to the Proposed Settlement

The deadline to object or opt-out was August 18, 2025. Kroll Decl. ¶ 17. In response to 368,454 direct postcard notices, only one objection has been filed,[8] and only six individuals have requested exclusion. *Id*. ¶ 18. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

### 8. Lack of Collusion among the Parties

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations. SA ¶ 7.1. Furthermore, Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Joint MFA Decl. ¶ 19. Thus, the Court can be assured that the negotiations were not collusive.

---

[8] *See supra* note 3.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-19-

### 9.  The Settlement Treats Class Members Equitably

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all Class Members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In deciding whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, WL 2467060, at *9 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d  1078, 1079 (N.D. Cal. 2007).

Here, all Class Members benefit from the same relief, without preferential treatment. While Plaintiffs seek Court approval of a service award, as explained in detail in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, the award of $2,000 per Plaintiff aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. Therefore, this factor also weighs in favor of approval.

### VII.    <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request this Court finally approve the settlement.

Respectfully Submitted,

Date: October 1, 2025

<u>/s/ John J. Nelson</u>
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-20-

jnelson@milberg.com

Joseph M. Lyon (SBN 351117)
**THE LYON FIRM**
9210 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (513) 381-2333
Facsimile: (513) 766-9011

## <u>Certificate of Compliance Pursuant to L.R. 11-6.2</u>

The undersigned counsel of record for Plaintiffs and the Settlement Class, certifies that this brief contains 5,988 words, which complies with the word limit of L.R. 11-6.1.

Date: October 1, 2025                    Respectfully Submitted,

                                        */s/ John J. Nelson*
                                        John J. Nelson

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No.  8:24-cv-00468-WLH-ADS

-21-